In the Matter of the Application for the Disbarment of William R. OJALA, an Attorney at Law of the State of Minnesota.

No. 48635.

Supreme Court of Minnesota.

Nov. 2, 1979.

Michael Hoover, Administrative Director on Professional Conduct, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

William R. Ojala, Gilbert, pro se.

## PER CURIAM.

This case comes before the court on a petition for the discipline of William R. Ojala brought by the Administrative Director on Professional Conduct at the direction of the Lawyers Professional Responsibility Board (LPRB). Pursuant to Rule 14(a), Rules on Lawyers Professional Responsibility, the case was referred to District Court Judge Daniel F. Foley as referee. After the hearing on the matter the referee filed his findings of fact, conclusions of law, and recommendation with this court. Neither respondent nor the Director ordered a transcript of the hearing within 5 days of the filing. Thus, pursuant to Rule 14(d), the findings of fact and conclusions of law of the referee are conclusive.[1] *See In re Hetland,* 275 N.W.2d 582 (Minn.1978). The petition for disbarment listed three complaints against respondent, and the referee found that all were supported by the evidence presented:

Complaint 1. Failure to File Federal and State Income Tax Returns.

The referee found that respondent had failed to file timely federal and state income tax returns for the years 1969, 1970, 1971, 1975, and 1976. The referee accepted respondent's explanation that the 1969–71 returns were not filed as a protest against the Vietnam War. Further, the referee felt that the 1969–71 delinquencies were closed questions because they have already been the subject of both state and federal disciplinary proceedings and had occurred before *In re Bunker,* 294 Minn. 47, 199 N.W.2d 628 (1972), was decided. In the *Bunker* case this court stated that failure to file income tax returns would, in the future, result in disbarment or suspension except where there are extreme extenuating circumstances. The referee concluded that respondent's failure to pay his 1975 and 1976 obligations in a timely manner justified imposition of discipline pursuant to the *Bunker* decision.

Complaint 2. Failure to Cooperate with Disciplinary Authorities.

In 1976, respondent was plaintiff's counsel in a personal injury case in which his two clients were initially awarded $11,500 and $5,000 by the jury. Defense counsel moved to reduce the $5,000 award, and the trial judge granted the motion over respondent's argument that the court then lacked jurisdiction due to a delay in filing the motion. Respondent appealed the case to this court and ultimately won in *Bowman v. Pamida, Inc.,* 261 N.W.2d 594 (Minn.1977). Prior to this court's deciding the appeal, however, respondent was quoted in a newspaper article as saying he was told that a senior partner of the defense law firm had met with the trial judge over "drinks and dinner" and that the judge had agreed to reduce the amount of the verdict.[2] Further, respondent charged that this court would decide the appeal on the basis of politics and personal prejudice. As a result of the newspaper article, respondent was contacted by the LPRB in an effort to investigate the charges against the trial judge and the law firm. Respondent ignored four letters and a phone call request-

---

1. Rule 14(d) states: "The referee shall make findings of fact, conclusions, and recommendations, file them with this Court, and notify the respondent and Director of them. Unless the respondent or Director within five days orders a transcript and so notifies this Court, the findings of fact and conclusions shall be conclusive. One ordering a transcript shall make satisfactory arrangements with the reporter for his payment. The reporter shall complete the transcript within 30 days."

2. The referee considered the specific charges made against the trial judge and the defense law firm and found them to be unsubstantiated. Nevertheless, the referee concluded that respondent did have a basis for his statements at the time he made them.

ing his cooperation in contravention of Minnesota precedent and DR 1–103(B).[3]

The referee found that respondent's refusal to cooperate with the Board of Professional Responsibility represented a prima facie violation of Disciplinary Rule 1–103(B). As a factual finding it cannot be disputed here, as no transcript was ordered by respondent. His defense to this charge is in part that only by going public could he have vindicated himself and his clients. The requirements of cooperation do not preclude a lawyer from publicly criticizing the Board or the judiciary. *See State Board of Law Examiners v. Hart*, 104 Minn. 88, 116 N.W. 212 (1908).

Complaint 3. Acquisition and Publication of Documents Wrongfully Removed from a Law Office.

During 1977 and 1978, respondent wrote a series of newspaper articles purporting to expose corruption in the legal system. Several of the articles were based on material stolen from the files of the law firm which respondent had opposed in the *Bowman* case, *supra*. Although respondent refused to answer questions concerning the source of the material, the referee found that respondent knew, or should have known, that the documents were stolen. The referee concluded that in acquiring and publishing the documents without consent respondent was subject to discipline for violating DR 1–102(A)(6).[4]

▪ Respondent would justify his use and publication of the stolen documents by the doctrine of the "public's right to know." We note that respondent is not charged with improperly criticizing the judiciary or other attorneys. The charge on this matter is that he engaged in conduct adversely reflecting on his fitness to practice law, conduct which indicates an outright disre-gard for the preservation of client confidences guaranteed by Canon 4 of the Code of Professional Responsibility. We see no constitutional bar to imposing discipline for the conduct so charged. Given his right to criticize the judiciary and other attorneys, there is no infringement of the First Amendment. *See Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). It is respondent's conduct as a lawyer in accepting materials from another lawyer's files which he knew or should have known were stolen and publishing them that is the basis for discipline.[5]

We come then to the determination of the discipline warranted by respondent's misconduct. The referee gave thoughtful consideration to all of the relevant factors, and we rely heavily upon his cogent discussion:

Here [in the first complaint], the parameters of possible discipline are in the first instance defined by the *Bunker* decision, which makes clear that only suspension or disbarment may follow from the failure to file tax returns in the required timely manner. Petitioner cites a number of aggravating factors in support of its contention that Respondent should be disbarred. Most probative of these factors are that Respondent's 1975 and 1976 tax returns were filed after disciplinary proceedings were commenced, the fact that those returns were filed, respectively twenty one and eleven months after they became due, and the fact that the 1975 and 1976 shortcomings were made with notice of the *Bunker* decision itself.

On the other hand, the undersigned is disinclined to, as proposed by Petitioner, regard the 1969 through 1971 tax episodes as conclusive on the matter of appropriate discipline. As recognized by

**3.** DR 1–103(B) states: "A lawyer possessing unprivileged knowledge or evidence concerning another lawyer or a judge shall reveal fully such knowledge or evidence upon proper request of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers or judges."

**4.** DR 1–102(A) states: "A lawyer shall not * * (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

**5.** As we said in *In re Scallen*, 269 N.W.2d 834, 841 (Minn. 1978), "The dictates of the Code of Professional Responsibility follow an attorney wherever he or she may travel and govern the attorney's every activity."

the Board at that time, and as found in these proceedings, those incidents were a matter of sincere protest against the Vietnam war, rather than an exercise in tax evasion. Respondent has been reprimanded by the Board for that course of conduct, as well as convicted, fined and disbarred by the Federal Court, and of course, those tax violations antedate the *Bunker* decision. To rely here upon this distinguishable course of conduct, which has already been the subject of criminal and disciplinary action as a basis for now disbarring Respondent would be to impermissibly inject punishment into the calculation of appropriate discipline.

This is especially so given the mitigating circumstances herein. Respondent has satisfied his tax obligations for 1969 through 1971 (except for the Federal fine) and has, albeit belatedly, filed returns for 1975 and 1976. No additional delinquencies are alleged for 1977 or 1978, and Respondent has testified that he and his accountant are currently working to satisfy all outstanding obligations. Successful completion of these efforts, as well as future compliance, can, therefore, be best assured through an appropriate suspension with reinstatement conditioned upon faithful performance of all future tax obligations. Since Respondent's tax transgressions, while serious, do not amount to a matter of moral turpitude, and since the administration of justice is not unduly harmed thereby, the imposition of more severe discipline might not only involve a punitive element, but would disproportionately emphasize the profession's private interest.

\* \* \* \* \* \*

Petitioner's complaint number two, that dealing with the failure to cooperate, boils down to Respondent's refusal to answer four letters from the Board, a failure to transmit knowledge of unprofessional conduct to the Board, and a bad attitude. While Respondent is entitled to dislike and criticize the Board, the effective discharge of the Board's function is in large part a function of cooperation on the part of attorneys. Hence, discipline is warranted for Respondent's refusal to answer correspondence, and to assist the Board's investigation of his charges. It should be noted, however, that Respondent has not been charged with a failure to respond to professional correspondence from other attorneys, nor with misconduct with regard to any client, nor any failure to respond to disciplinary petitions.

As made clear in Part III of this memorandum, complaint number three is regarded as a serious and troublesome matter, and represents the chief reason for the within recommendation of indefinite suspension with substantial conditions for reinstatement. Respondent's acquisition and use of stolen materials is an adverse reflection upon his fitness to practice law, and hence, the undersigned recommends that the stated conditions be imposed as a means of evaluating Respondent's willingness to abide in the future by the Code's obligations.

On balance, however, it is the considered opinion of the undersigned that the circumstances herein do not amount to the strong and convincing showing that Respondent is wholly unfit to practice law, and that disbarment is *sine qua non* to the protection of the public and the administration of justice. If in fact the public interest is the paramount consideration in disciplining an attorney, it is clear that the interest requires that the door be left open for Respondent's return to the practice of law. Not only has he served the public generally through his terms as state legislator and county commissioner, he has, for all that appears here, represented his private clients competently and faithfully. Further, Respondent's zealous and devoted service on behalf of disadvantaged clients without regard to renumeration represents an unusually prescient effort to vindicate the profession's self-stated responsibility to meet such needs. The permanent loss of these efforts would represent a denial rather than a vindication of the public interest. (Citations omitted.)

■ Absent these mitigating circumstances, disbarment might well be required by respondent's misconduct. We are persuaded, however, as was the referee, that the imposition of disbarment would not serve the public interest in this case. Following the recommendation of the referee, we hereby indefinitely suspend William R. Ojala from the practice of law in this state for a period of not less than 3 years, with the added provision that a petition for reinstatement may be entertained 1 year from date or at any time thereafter, subject to the following conditions:

1. Full payment of any tax delinquencies and penalties owing for the tax years 1975 and 1976 to both the federal and state tax authorities;

2. Faithful and timely performance of all tax obligations for the interim years between suspension and petition for reinstatement;

3. That he engage in no conduct prohibited by the Code of Professional Responsibility during the period of suspension as an indication of his willingness to abide by the Code's obligations if and when he resumes the practice of law;

4. A sincere and private apology to the client whose affairs were published in the July 19, 1977, Gilbert Herald;

5. The return of any property, and any copies of any documents currently possessed by respondent belonging to the law firm of Trenti, Saxhaug, Berger, Carey and Roche.

So ordered.